## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MARY MORRISON,**

      **Plaintiff,**

              **v.**

**COLUMBUS FAMILY HEALTH
CARE LLC,**

      **Defendant.**

                      **Case No. 2:22-cv-3460**
                      **JUDGE EDMUND A. SARGUS, JR.**
                      **Magistrate Judge Elizabeth P. Deavers**

### OPINION AND ORDER

The matter before the Court is Plaintiff Mary Morrison's ("Plaintiff") Motion for Conditional Certification, Court-Ordered Corrective Notice, and Court-Authorized Notice to Potential Opt-In Plaintiffs ("Motion"). (ECF No. 12.)  Defendant Columbus Family Health Care LLC ("Defendant") has responded, and Plaintiff has replied. (ECF Nos. 15, 16.)  Thus, the motion is ripe for review.  For the reasons stated herein, the Motion is **GRANTED in part and DENIED in part**. (ECF No. 12.)

### I. BACKGROUND

Defendant is a corporate entity that is in the business of providing home healthcare services. (Compl. ¶¶ 6, 12, ECF No. 1.)  Defendant, operating out of Columbus, Ohio, employed Plaintiff as a home health aide from October 2010 to September 2022. (*Id.* ¶¶ 13, 16.) At all times relevant to this action, Defendant compensated Plaintiff on an hourly basis, and she regularly worked in excess of 40 hours per week. (*Id.* ¶¶ 17, 19.)

In her role as a home health aide, Defendant required Plaintiff to drive to clients' homes to provide home health services. (*Id.* ¶ 20.) This often required Plaintiff to travel to and from multiple different clients within a single shift. (*Id.* ¶ 21.) Defendant, however, did not pay Plaintiff for her

time traveling between clients' homes within a single shift. (*Id.* ¶ 23.) For example, on August 9, 2021, Plaintiff serviced four clients over the course of a single shift. (Ex. A-2 to Pl. Decl., ECF No. 12-1.) During this shift, Plaintiff accumulated 52 minutes of travel time between clients' homes: after servicing the first client, she incurred 5 minutes of drive time traveling to the second client; after servicing the second client, she incurred 39 minutes of drive time traveling to the third client; and after servicing the third client, she incurred 8 minutes of drive time traveling to the final client of her shift. (*Id.*) Plaintiff did not receive any compensation for this travel time. (Compl. ¶ 23, ECF No. 1.)

Plaintiff understands that other home health aides, numbering approximately 50 at any given time, also did not receive compensation for their travel time between clients' homes within a single shift. (*Id.* ¶ 15; Pl. 2nd Decl. ¶ 8, ECF No. 16-1.) Plaintiff learned of this allegedly company-wide pay practice through her personal experience as a home health aide and as a supervisor of home health aides from 2014 to 2020.  (Pl. 2nd Decl. ¶¶ 2-8, ECF No. 16-1.) As a supervisor, Plaintiff was actively involved in managing the schedules of home health aides, and she often had to answer their questions concerning why Defendant did not pay them for their time spent traveling between clients' homes during a single shift. (*Id.* ¶¶ 4-7.) Plaintiff alleges that she brought up this issue to her manager, but her manager refused to address her complaint. (Pl. 1st Decl. ¶¶ 27-29, ECF No. 12-1.)

Plaintiff commenced this action against Defendant on September 20, 2022. (*See* Compl., ECF No. 1.) The Complaint alleges Defendant violated: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and (2) the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code § 4111, *et seq.*

Approximately one month after Plaintiff filed the instant action, Plaintiff's counsel learned that Defendant had offered payments to putative class members to compensate them for unpaid overtime, including unpaid travel time as alleged in Plaintiff's Complaint, in exchange for a waiver and release of these claims. (Dyer Decl. ¶ 2, ECF No. 12-2.) On November 2, 2022, Plaintiff's counsel received an email from Defendant's counsel containing 20 executed "Settlement Agreement and Release of Claims" ("Agreement") from putative class members, all of whom accepted payment of a sum of money in exchange for a purported release of claims against Defendant. (*Id.* ¶¶ 4-5.)

On November 22, 2022, Plaintiff filed the instant motion seeking conditional certification of the following FLSA collective:

> All current and former Home Health Aides employed by Defendant between September 20, 2019 and [the date of conditional certification], who worked at least 40 hours in any workweek in which they traveled between clients' homes in a single shift.

(Mot. at 1, ECF No. 12.) In addition, Plaintiff asks the Court to issue an order requiring Defendant to send a corrective notice to putative class members who have received purported settlement payments from Defendant. (*Id.*) Finally, Plaintiff requests that the Court approve her proposed procedure for sending notice of the FLSA claims to the proposed collective.[1] (*Id.*)

## II. LEGAL STANDARD

"The FLSA 'was enacted by Congress to be a broadly remedial and humanitarian statute,' and in interpreting the FLSA the Supreme Court has long noted that the statute attempted to mitigate the effects of the 'unequal bargaining power . . . between employer and employee.'"

---

[1] Plaintiff also briefly asks the Court to invalidate all Agreements executed by potential opt-in plaintiffs. (Mot. at 13, ECF No. 12.) Because Defendant is not asserting that the Agreements are valid settlements or waivers of liability, there is no need for the Court to declare them void. *See Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio May 23, 2011).

*Myers v. Marietta Mem'l. Hosp.*, 201 F. Supp. 3d 884, 889 (S.D. Ohio 2016) (citing *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). "Due to the 'remedial nature of this statute,' the employee's burden 'of proving that he performed work for which he was not properly compensated' should not be made 'an impossible hurdle for the employee.'" *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31–32 (2014)). The FLSA requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1).

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). There are "two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Hughes v. Gulf Interstate Field Servs.*, No. 2:14-cv-432, 2015 U.S. Dist. LEXIS 88205, at *6 (S.D. Ohio July 7, 2015) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).

Similarly situated employees are permitted to opt-in to the collective action. *Myers*, 201 F. Supp. 3d at 889–90 (citing *Comer*, 454 F.3d at 546). The lead plaintiff bears the burden of showing that the proposed class members are similarly situated to the lead plaintiff. *Id.* at 890 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). The FLSA does not define "similarly situated" and neither has the Sixth Circuit. *Id.* "[N]otably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification

under Federal Rule of Civil Procedure 23." *Id.* "District courts conduct a two-phase inquiry to determine whether plaintiffs are similarly situated: conditional and final certification." *Id.* (citing *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012)).

"In the first phase, the conditional-certification phase, conducted at the beginning of the discovery process, named plaintiffs need only make a 'modest factual showing' that they are similarly situated to proposed class members." *Id.* (citing *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015); *Comer*, 454 F.3d at 547). The standard at the first step is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Id.* (citing *Comer*, 454 F.3d at 547); *Hughes*, 2015 U.S. Dist. LEXIS 88205 at *7. As this Court explained in *Myers v. Marietta Memorial Hospital*:

> Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." Showing a "unified policy" of violations is not required. The named plaintiff "need only show that [her] position is similar, not identical, to the positions held by the putative class members."

201 F. Supp. 3d at 890 (citing *O'Brien*, 575 F.3d at 584–5; *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867–68 (S.D. Ohio 2011) (alteration omitted)).

"If conditional certification is granted, 'plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees.'" *Id.* (citing *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 U.S. Dist. LEXIS 148191, at *1 (S.D. Ohio Nov. 2, 2015)). Determining whether to allow an action to proceed as a collective action is left to the trial court's discretion. *Comer*, 454 F.3d at 546. Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the trial court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis*, 789 F. Supp. 2d at 867.

5

After notice has been sent and discovery has been completed, a defendant can move to decertify the class, challenging a court's preliminary determination that other employees are similarly situated. *Meyers*, 201 F. Supp. 3d at 890. At this second stage, "courts 'examine more closely the question of whether particular members of the class are, in fact, similarly situated.'" *Id*. (citing *Comer*, 454 F.3d at 547). "If [a court] concludes that they are similarly situated, the collective action proceeds to trial; if not, the court de-certifies the class, dismisses the opt-in plaintiffs without prejudice, and proceeds to trial on the named plaintiff[(s)]' individual claims." *Sisson v. OhioHealth Corp.*, 2:13-CV-0517, 2013 US. Dist. LEXIS 162464, at *6 (S.D. Ohio Nov. 14, 2013) (citing *Smith v. Lowe's Home Ctrs.,* 236 F.R.D. 354, 357 (S.D. Ohio 2006)).

### III. DISCUSSION

Plaintiff moves for conditional certification of the following class:

> All current and former Home Health Aides employed by Defendant between September 20, 2019 and [the date of conditional certification], who worked at least 40 hours in any workweek in which they traveled between clients' homes in a single shift.

(Mot. at 1, ECF No. 12.) Defendant opposes certification arguing that Plaintiff has failed to meet her burden to establish a similarly situated class. (*See* Opp'n, ECF No. 15.)

#### A. Similarly Situated

"To obtain conditional certification, [a p]laintiff need only make a modest factual showing that [she is] similarly situated to the putative class members." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 896 (S.D. Ohio 2018). A plaintiff can meet this burden by demonstrating that she and the other putative class members "'suffer from a single, FLSA-violating policy' or [that] their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Ford v. Carnegie Mgmt.*

6

*Servs., Inc.*, No. 2:16-cv-18, 2016 U.S. Dist. LEXIS 62276, at *5 (S.D. Ohio May 11, 2016)

(quoting *O'Brien*, 575 F.3d at 585).

> Plaintiff submits that:
>
> [c]onditional certification is proper in this case because the proposed class—Home Health Aides who worked at least 40 hours in any given workweek in which he or she traveled between clients' homes in a single shift—were all subject to the same payroll practices. Defendant admits that all Home Health Aides are paid on an hourly basis. Plaintiff, through her declaration, timesheets, and payroll records, has demonstrated that Defendant refuses to compensate Home Health Aides for time spent driving between clients' homes within a single shift. Plaintiff has provided specific examples of the demonstrated violation. Plaintiff has been employed with Defendant throughout the three-year statute of limitations period and has been subject to the same unlawful policies and practices throughout. Plaintiff is aware that all Home Health Aides employed by Defendant were subject to the same policies and practices.

(Mot. at 16, ECF No. 12 (citations omitted).)

Plaintiff contends that Defendant's pay practice violated the FLSA, which requires employers to pay employees for all hours worked, including at a rate of one and one-half times that employee's regular rate of pay, for hours worked in a workweek in excess of 40. (*Id.* at 13 (citing 29 U.S.C. §§ 206, 207).) Specifically, Plaintiff alleges that the FLSA required Defendant to include the drive time home health aides incurred when traveling between clients' homes when calculating each home health aide's hours worked, and that Defendant's failure to do so violated the FLSA (and Ohio law). (*Id.* (citing 29 C.F.R. § 785.38; *Chao v. Akron Insulation & Supply, Inc.*, No. 5:04-CV-0443, 2005 U.S. Dist. LEXIS 9331, at *28–29 (N.D. Ohio May 5, 2005), *aff'd*, 184 Fed. Appx. 508 (6th Cir. 2006)).) Thus, Plaintiff alleges that she and the other putative class members "suffer[ed] from a single, FLSA-violating policy"—namely, Defendant's refusal to compensate its home health aides for time spent traveling between clients' homes in a single shift. *See O'Brien*, 575 F.3d at 585.

Additionally, Plaintiff, in her own declarations, asserts that she is similarly situated to the putative class. Plaintiff states:

> 2. I was employed with [Defendant] in the role of Team Lead between approximately 2014 – mid-2020.
>
> 3. In this role, I acted as a supervisor of other Home Health Aides employed with Defendant.
>
> 4. I was involved in interviewing, hiring, and scheduling for other Home Health Aides.
>
> 5. I set Home Health Aides' schedules, and through that process, I was aware that other Home Health Aides serviced multiple clients within a single shift.
>
> 6. I also communicated with Home Health Aides about any issues they had related to their schedules or about their pay.
>
> 7. I often had to answer questions from Home Health Aides, who asked me why they were not getting paid for time spent driving between clients' homes within a single shift.
>
> 8. It is my understanding that Defendant did not pay any of its Home Health Aides for travel time between clients' homes in a single shift.
>
> \*      \*      \*
>
> 13. Home Health Aides are only paid for time spent "clocked in" at clients' homes. I was informed of this by my manager, Leslie Hines.
>
> 15. Throughout the last three years of my employment with Defendant, Home Health Aides—including me—were not paid for time spent driving between clients' homes within a single shift.
>
> 17. I drove from one client's home directly to the next.
>
> 18. I was paid for time I was "clocked in" at each client's home, but I was not paid for my drive time between clients. This was typical throughout my employment with Defendant.

(Pl. 1st Decl. ¶¶ 13, 15, 17-18, ECF No. 12-1; Pl. 2nd Decl. ¶¶ 2-8, ECF No. 16-1.)

Defendant, in response, argues (1) a substantial amount of Plaintiff's alleged uncompensated travel time is actually time for which Plaintiff was relieved from duty while she

waited for clients to return from their doctors' appointments, and therefore is not compensable under the FLSA; (2) Plaintiff has failed to provide sufficient evidence demonstrating a widespread scheme sufficient to render Plaintiff similarly situated to Defendant's other home health aides; and (3) the evidence Plaintiff does provide (namely, Plaintiff's timesheet and her first declaration) establishes that Defendant properly compensated Plaintiff for all time she recorded. (*See* Opp'n, ECF No. 15.)

Plaintiff responds to Defendant's position by arguing that Defendant's opposition asks the Court to resolve factual disputes and make a ruling on the merits of Plaintiff's underlying claim, both of which are inappropriate on a motion for conditional certification. (Reply at 2-3, ECF No. 16.) Plaintiff contends that Defendant's opposition requires the Court to decide whether a portion of Plaintiff's time between servicing clients is non-compensable waiting time. (*Id.* at 2.) Plaintiff also argues that she has set forth sufficient evidence at this stage demonstrating that a class of similarly situated home health aides exists. (*Id.* at 4-9.)

The Court agrees with Plaintiff; based on the facts highlighted in Plaintiff's Motion and Reply, the Court finds that Plaintiff has sufficiently demonstrated that she is similarly situated to the putative class.

Defendant devotes a significant portion of its opposition scrutinizing Plaintiff's alleged uncompensated travel time in arguing that the actual drive time between clients is significantly less than what Plaintiff has alleged, and that much of this alleged uncompensated travel time is actually non-compensable waiting time. (*Id.* at 2-3 (collecting cases supporting the proposition that periods during which an employee is completely relieved from duty long enough to enable the employee to use the time effectively for her own purposes, including waiting time, do not constitute hours worked under the FLSA).) But this argument, which touches on the merits of the

case, has little force at the conditional certification stage. At this juncture, the Court takes no position on the case's merits because a position on the merits does not inform the conditional certification question. *See Hughes*, 2015 U.S. Dist. LEXIS 88205 at *12 (The "determination of whether [the] [p]laintiffs and others similarly situated qualify as exempt employees under the FLSA is a merits determination that will be considered at the second phase of certification, not at this initial conditional inquiry."); *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1042 (S.D. Ohio 2018) ("During the conditional certification phase, a court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility."); *Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 733–34 (S.D. Ohio 2016) ("[A]t the conditional certification stage, the Court does not consider the merits of the claims, resolve factual disputes, or decide substantive issues."); *Jungkunz v. Schaeffer's Inv. Res., Inc.*, No. 1:11-cv-691, 2014 U.S. Dist. LEXIS 43490, at *21 (S.D. Ohio Mar. 31, 2014) ("[T]he court's analysis is confined to evaluating whether the proposed class is similarly situated and does not touch upon the merits of [the] plaintiff's claims." (internal citations omitted)).

In addition to arguing its case on the merits, Defendant argues that Plaintiff has failed to put forth sufficient evidence demonstrating that she is similarly situated to the putative class. (*See* Opp'n at 1-3, ECF No. 15.) Specifically, Defendant argues that neither Plaintiff's timesheet nor her first declaration evidence any company-wide, FLSA-violating policy. In challenging Plaintiff's timesheet, Defendant asserts that it establishes that Defendant paid overtime for all time she recorded. In other words, Defendant argues, there is no evidence of an FLSA violation on the face of Plaintiff's timesheet. In making this argument, Defendant contrasts the facts here with those from *Jasper v. Home Health Connection, Inc.*, No. 2:16-cv-125, 2016 U.S. Dist. LEXIS 71616 (S.D. Ohio June 1, 2016). (*Id.* at 5, 8 (noting that the plaintiff's affidavit in *Jasper* included a pay

stub clearly establishing that he was not paid a rate of time and a half his regular rate for the hours he worked over 40).) As for Plaintiff's first declaration, Defendant argues that it is insufficient to warrant conditional certification because it does not identify any other employees that Defendant allegedly failed to pay for their travel time; instead, Plaintiff simply speculates that all home health aides were not paid travel time.

The Court agrees with Plaintiff that she has put forth sufficient evidence to meet the fairly lenient standard for conditional certification. First, Defendant's attack on Plaintiff's timesheet is misplaced. Plaintiff does not suggest that Defendant failed to pay overtime to its home health aides for *recorded* time; instead, Plaintiff's claim alleges that Defendant refused to compensate home health aides for time spent driving between clients' homes within a single shift. Thus, the legal violations upon which Plaintiff basis her claim are not apparent on the face of Plaintiff's timesheet. The presence of an FLSA violation on the face of Plaintiff's timesheet is not a prerequisite for conditional certification. *See, e.g., Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 U.S. Dist. LEXIS 69772, *18–24 (S.D. Ohio Apr. 21, 2020) (granting conditional certification based upon plaintiff's lone declaration stating that defendant failed to pay minimum wage); *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 875–77 (S.D. Ohio Mar. 10, 2017) (finding declarations from two plaintiffs, standing alone, sufficient to warrant conditional certification); *Ford v. Carnegie Mgmt. Servs.*, No. 2:16-cv-18, 2016 U.S. Dist. LEXIS 62276, *5-6 (S.D. Ohio May 11, 2016) (granting conditional certification on the basis of plaintiff's declaration, which stated, without supporting evidence, that the employer improperly reduced third-shift employees' compensable time and made manual edits to all hourly employees' compensable time by forging altered timecards).

Defendant's second argument—that conditional certification is inappropriate because Plaintiff relies solely on her own declaration, which fails to identify any other employees to whom Defendant allegedly failed to pay their compensable travel time—also falls short. "A court can conditionally certify a collective action under the FLSA on the strength of a single affidavit or declaration if that document sets forth sufficient facts from which the court may reasonably infer the existence of other employees who were subject to the same wage and work hours policy as plaintiff." *Rembert v. A Plus Home Health Care Agency LLC*, No. 2:17-cv-287, 2018 U.S. Dist. LEXIS 72816, at *4–5 (S.D. Ohio May 1, 2018) (citation omitted). Indeed, this Court has done so on multiple occasions. *See Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-cv-1110, 2019 U.S. Dist. LEXIS 1815, at *5–9 (S.D. Ohio Jan. 4, 2019) (granting conditional certification on a single declaration); *Ford*, 2016 U.S. Dist. LEXIS 62276 at *10 (same); *Sisson*, 2013 U.S. Dist. LEXIS 162464 at *20 (same).

And even if a plaintiff's declaration does not explicitly identify members of the putative class, as Defendant argues here, conditional certification may still be appropriate. *See Miller v. HG Ohio Employee Holding Corp.*, No. 2:21-cv-3978, 2022 U.S. Dist. LEXIS 120475, at *12–13 (S.D. Ohio July 7, 2022) (granting conditional certification where plaintiffs declared they were personally "aware" of fellow employees being subjected to the same FLSA-violating policy); *Sisson*, 2013 U.S. Dist. LEXIS 162464 at *20 (granting motion for conditional certification supported by a single witness declaration even though "Plaintiff has not identified any proposed plaintiffs by name or submitted affidavits from any potential plaintiffs."); *Arocho v. Crystal Clear Bldg. Servs., Inc.*, No. 1:12-cv-2186, 2013 U.S. Dist. LEXIS 61579, at *7 (N.D. Ohio Apr. 20, 2013) (granting conditional certification where plaintiffs declared "that fellow employees, personally known to them, suffered the same FLSA violations").

What matters, ultimately, is the *content* of a plaintiff's declaration speaking to the presence of a "single, FLSA violating policy." Here, the content of Plaintiff's declarations is sufficient to carry her modest burden of allowing the Court to reasonably infer the existence of other employees who were subjected to the same allegedly unlawful pay practices while employed by Defendant. Plaintiff's first declaration alleges that: (1) Defendant paid home health aides on an hourly basis, they regularly worked more than 40 hours per week, and they provided services to multiple clients within a single shift; (2) Defendant did not pay its home health aides for time spent traveling between clients' homes within a single shift; and (3) Plaintiff's manager was aware of this practice and informed Plaintiff that it was Defendant's practice not to pay its home health aides for their drive time between clients' homes during a single shift. (Pl. 1st Decl. ¶¶ 9-11, 13-14, 27, ECF No. 12-1.) And Plaintiff's second declaration asserts that, while serving in her role as a supervisor, Plaintiff (1) managed the schedules of home health aides, making her aware that other home health aides provided services to multiple clients within a single shift; and (2) communicated with other home health aides regarding Defendant's pay practices, providing Plaintiff with personal knowledge that Defendant's practice of refusing to pay for travel time extended to other home health aides. (Pl. 2nd Decl. ¶¶ 2-8, ECF No. 16-1.) In light of these declarations, Plaintiff has carried her burden to "make a modest factual showing that [she is] similarly situated to the putative class members." *See Hall*, 299 F. Supp. 3d at 896.

### B. Notice

"If the Court determines that the potential plaintiffs are similarly situated, the court must then determine that the proposed notice is timely, accurate, and informative as to properly notify the proposed class." *Brittmon*, 285 F. Supp. 3d at 1043 (internal citations omitted); *see also Myers* 201 F. Supp. 3d at 890; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 166 (1989) (noting

notice must be "timely, accurate, and informative"). The United States Supreme Court determined that notice should be sent in the early stages of litigation, recognizing the "wisdom and necessity" of early court involvement in managing opt-in cases and facilitating notice. *Hoffmann-La Roche Inc.*, 493 U.S. at 171.

Plaintiff requests that the Court approve her proposed opt-in notice and procedure and has attached a proposed Notice of Rights to be sent by mail and email to the putative collective.  (*See* Proposed Notice, ECF No. 12-4.) Plaintiff requests notice be sent to all home health aides employed by Defendant between September 20, 2019 and the date of conditional certification, who worked at least 40 hours in any workweek in which they traveled between clients' homes in a single shift. (Mot. at 23, ECF No. 12.) Plaintiff also requests the opt-in period remain open for sixty days, that Defendant identify all potential opt-in plaintiffs within 14 days of the entry of this Court's order conditionally granting certification, and that the Court authorize Plaintiff to send a reminder email and text message to all proposed putative class members halfway through the notice period.  (*Id.* at 23-27.) Defendant does not raise any objections to Plaintiff's proposed notice plan. (*See* Opp'n, ECF No. 15.)

### a.  Method of Disseminating Notice

The Court will permit Plaintiff to issue notice via U.S. Mail and email. *See Loomis v. Unum Group Corp.*, No. 1:20-CV-251, 539 F. Supp. 3d 898, 911 (E.D. Tenn. May 13, 2021) ("[C]ourts within the Sixth Circuit have routinely approved dual notification through regular mail and email.") (collecting cases); *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899 (S.D. Ohio 2018) ("The trend in this Court . . . is to allow notice by mail and email to ensure that putative class members receive notice of the pending action."); *Abner v. Convergys Corp.*, No.

1:18-cv-442, 2019 U.S. Dist. LEXIS 62597, *18 (S.D. Ohio Apr. 11, 2019) (permitting notice by postal mail and email to putative class members).

### b. Opt-In Period

Plaintiff requests—and Defendant does not oppose—an opt-in period of 60-days. "There is no hard and fast rule controlling the length of FLSA notice periods." *Ganci v. MBF Inspection Servs.*, No.: 2:15-cv-2959, 2016 U.S. Dist. LEXIS 128190, *6 (S.D. Ohio Sept. 20, 2016). Courts in this district routinely exercise their discretion to approve 60-day opt-in periods. *See, e.g.*, *id.* at *7; *McElwee v. Bryan Cowdery, Inc.*, No. 2:21-cv-1265, 2021 U.S. Dist. LEXIS 208968, *19 (S.D. Ohio Oct. 29, 2021); *Sutton v. Diversity at Work Grp., Inc.*, No. 1:20-cv-682, 2020 U.S. Dist. LEXIS 235617, *11–12 (S.D. Ohio Dec. 15, 2020). Because Defendant does not object to the 60-day opt-in period, and because this proposed opt-in period is within the standard range for collective action notices, the Court finds the 60-day period appropriate in this case.

### c. Disclosure of Names and Contact Information

In order to facilitate timely and orderly notice to the putative collective, Plaintiff requests that the Court order Defendant to identify all potential opt-in plaintiffs within 14 days of the entry of this Order. (Mot. at 26, ECF No. 12.) Specifically, Plaintiff requests that Defendant identify each such person by full name, last known address, all known email addresses, and dates of employment. (*Id.*) Defendant does not oppose Plaintiff's request. The Court has previously found similar disclosures to be appropriate. *See McElwee*, 2021 U.S. Dist. LEXIS 208968 at *19 (ordering defendant to produce the names, dates of employment, last known mailing addresses, and all known email addresses of the putative class members within 14 days of granting conditional certification); *Hawkins v. Extended Life Home Care, Ltd.*, No. 2:18-CV-344, 2019 U.S. Dist. LEXIS 30887, *10 (S.D. Ohio Feb. 27, 2019) (ordering defendant, within 14 days of granting

15

conditional certification, to provide plaintiff with an Excel spreadsheet containing the putative collective action members' last known mailing addresses, telephone numbers, email addresses, and dates of employment). The Court therefore grants the requested disclosure of names and contact information.

### d. Reminder Notice

Plaintiff requests that the Court allow her to send a Court-authorized follow-up email and text message to putative class members halfway through the opt-in period. (Mot. at 25-26, ECF No. 12.) The Court, however, is cognizant that "[c]ourts should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims." *Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2016 U.S. Dist. LEXIS 93866, at *6–7 (S.D. Ohio July 19, 2016) (quoting *Hoffman-La Roche*, 493 U.S. at 168–69)); *see also Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, at *13 (S.D. Ohio Dec. 21, 2012) ("Many courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit – and encouraging participation."). In striking the appropriate balance between facilitating notice and avoiding the perception of encouraging participation, in circumstances where a court approves dual notice to the putative collective members, as is the case here, this Court routinely denies requests for reminder notices. *See Brittmon*, 285 F. Supp. 3d at 1045 ("This Court, however, has regularly denied [reminder notices], particularly when it approves dual notice to former employees in the first instance."); *Ganci*, 2016 U.S. Dist. LEXIS 128190 at *7–8 (collecting cases) (noting that "[t]his Court is even less inclined to authorize a reminder notice where a defendant does not object to service of the notice by more than one method"). Here, the Court has already granted Plaintiff's request to send its proposed notice by U.S. Mail and electronic mail. In light of having

16

approved two forms of notice, and in the interest of unnecessarily stirring up litigation or improperly suggesting this Court's endorsement, the Court will not permit Plaintiff to send a reminder notice.

### C. Corrective Notice

Plaintiff argues that the Court should order Defendant to issue a corrective notice to all putative collective action members who executed an Agreement with Defendant following Plaintiff's filing of this lawsuit, citing the likelihood that they have not been compensated for the full amount to which they may be entitled under the FLSA and the risk that the executed Agreements will mislead them into believing they cannot opt into the collective action. (Mot. at 20-22, ECF No. 12; Reply at 9-10, ECF No. 16; *see also* Proposed Corrective Notice, ECF No. 12-3.) Defendant does not oppose Plaintiff's request. (*See* Opp'n, ECF No. 15.)

The Court agrees that a corrective notice is appropriate. First, Defendant has failed to shed any light on a number of issues that trouble the Court concerning these executed Agreements. For example, it is unclear (1) how Defendant presented these payments to the putative class, (2) whether Defendant provided these putative collective action members with their payroll records and timesheets to review before executing their Agreements, (3) whether Defendant informed them of this lawsuit, (4) whether Defendant informed them of the potential damages available to them under the FLSA, and (5) whether Defendant paid them liquidated damages. Although these putative collective action members received some compensation, given the uncertainty surrounding these issues, it is far from clear whether this compensation matches or exceeds that to which they may be entitled under the FLSA.

Second, the language of the Agreement is likely to have a chilling effect on the willingness of collective action members to participate in this action. For instance, section 4 of the Agreement sets forth the putative collective action member's "Covenant Not to Sue":

> Employee further agrees . . . that he will not commence, maintain, participate in, or file any claim against [Defendant] . . . in a lawsuit in any federal, state or local court, with respect to any matter arising out of or in any way related, directly or indirectly, to his employment, his compensation, or with respect to any other transaction, event or occurrence pre-dating the date of this Agreement . . . .

(Settlement Agreement § 4, ECF No. 12-2.)

The Agreement also details the consequences that a putative collective action member may face if he or she fails to release all claims against Defendant:

> If Employee breaches his promise in Section 3 of this Release and files a claim or lawsuit based on what he released in this Agreement, Employee agrees to pay for all liabilities and costs incurred by [Defendant], including reasonable attorneys' fees, in defending against any such lawsuit.

(*Id.* § 3(d).)

And the Agreement reinforces the employee's purported release of all claims against Defendant in its final paragraph, located right above the employee's signature line:

> **YOU UNDERSTAND THAT, BY SIGNING THIS RELEASE AND ACCEPTING THE CONSIDERATION DESCRIBED IN THIS AGREEMENT, YOU ARE FOREVER GIVING UP THE RIGHT TO SUE [DEFENDANT] AND ANY OTHER PERSON OR ENTITY ASSOCIATED OR AFFILIATED WITH IT, FOR ANY CLAIMS, OF ANY TYPE, THAT YOU MIGHT HAVE AGAINST ANY OF THEM BASED ON ANY EVENTS THAT HAVE OCCURRED UP TO AND INCLUDING THE MOMENT YOU SIGN THIS AGREEMENT.**

(*Id.* at 6.)

A plain reading of the Agreement suggests that those home health aides who have executed the Agreement are likely under the impression that they can no longer participate in the instant action, which runs counter to well-established precedent permitting collective action participation

despite private agreements to the contrary. *See Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) (quoting *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986) (stating that the FLSA has "bann[ed] private settlements of disputes about pay"); *see also McConnell v. Applied Performance Techs.*, No. C2-01-1273, 2002 U.S. Dist. LEXIS 27598, at *18–19 (S.D. Ohio Mar. 18, 2002) (finding settlement agreement did not bar plaintiff from bringing FLSA suit because waiver of rights under FLSA was void as a matter of law).

Thus, the Agreement here, which purports to bar potential opt-in plaintiffs from participating in Plaintiff's collective, could very well chill their participation. As such, an appropriate remedy to cure this potentially chilling effect is to authorize corrective notice. *See Salazar v. Driver Provider Phoenix LLC*, 532 F. Supp. 3d 832, 839–40 (D. Ariz., Apr. 5, 2021) (ordering corrective notice where potential collective action members signed agreements to arbitrate employment-related disputes while plaintiffs' motion for conditional certification was pending; *Lee v. GAB Telecom, Inc.*, No. 12-cv-14104, 2013 U.S. Dist. LEXIS 111537, at *6 (E.D. Mich. Aug. 8, 2013) (authorizing corrective notice to potential opt-in plaintiffs where defendant improperly served interrogatories directly on opt-in participants, which potentially had a chilling effect on potential opt-ins); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 765–66 (N.D. Ohio Aug. 6, 2010) (ordering corrective notice where defendant obtained settlement releases without informing class members they were giving up the right to participate in putative products liability class action).

Having carefully reviewed Plaintiff's proposed corrective notice, *see* ECF No. 12-3, and in the absence of any objection to the language contained therein, the Court orders Defendant to provide a written corrective notice to all putative collective action members who have executed an Agreement.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Conditional Certification, Court-Ordered Corrective Notice, and Court-Authorized Notice to Potential Opt-In Plaintiffs is **GRANTED in part and DENIED in part**. (ECF No. 12.)

The Court conditionally certifies the following class of opt-in plaintiffs:

All current and former Home Health Aides employed by Defendant between September 20, 2019 and [the date of conditional certification], who worked at least 40 hours in any workweek in which they traveled between clients' homes in a single shift.

Additionally, the Court **ORDERS** Defendant to produce, within **14 days** from the date of this Opinion and Order, a list in electronic and importable format of the names, last known physical addresses, email addresses, and dates of employment of all potential opt-in plaintiffs. Plaintiff is authorized to send the proposed notice to all potential opt-in plaintiffs by U.S. mail and email. All potential opt-in plaintiffs shall be provided sixty (60) days from the date of mailing the notice and opt-in consent forms to opt into this lawsuit.

The Court also **ORDERS** Defendant to issue Plaintiff's proposed corrective notice (ECF No. 12-3) to all potential opt-in plaintiffs who have received purported settlement payments from Defendant.

**IT IS SO ORDERED.**

5/5/2023                                          s/Edmund A. Sargus, Jr.
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**