UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARY MORRISON, on behalf of
herself and others similarly situated,

             **Plaintiff,**

    v.

COLUMBUS FAMILY HEALTH
CARE LLC,

            **Defendant.**

Case No. 2:22-cv-3460
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on the parties' Revised Joint Motion for Approval of FLSA Settlement Agreement. (Rev. Jt. Mot., ECF No. 31.) For the reasons stated below, the Revised Joint Motion is **GRANTED.**

### BACKGROUND

Plaintiff Mary Morrison brought this action in September 2022, under the Fair Labor Standards Act ("FLSA") and Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (Compl., ECF No. 1.) Defendant Columbus Family Health Care LLC provides home healthcare services throughout Columbus, Ohio and the surrounding areas. (*Id.* ¶¶ 12–13.) Plaintiff alleges that Defendant failed to properly pay its Home Health Aides ("HHA")—including Plaintiff—overtime compensation for time the HHAs spent traveling between clients. (*Id.* ¶¶ 28–44.)

Plaintiff filed a "Pre-Discovery Motion for Conditional Class Certification and Motion for Court-Ordered Corrective Notice to Potential Opt-In Plaintiffs" (ECF No. 12), which this Court granted in part and denied in part (ECF No. 18). Plaintiff was authorized to send notice to potential opt-in plaintiffs, as well as corrective notice to certain potential opt-ins who had received purported settlement payments from Defendant. (*Id.*) Four opt-ins consented to join the suit (together with

Plaintiff, "Plaintiffs"). (ECF Nos. 19, 20, 24.)

On December 19, 2023, the parties notified the Court that they had reached a settlement. (ECF No. 27.) A little over a month later, they filed a Joint Motion, asking the Court to approve their Settlement Agreement, as well as the individual settlement payments to Plaintiffs, the payment of attorneys' fees and litigation expenses to Plaintiffs' counsel, and to dismiss the lawsuit on the merits with prejudice. (Jt. Mot., ECF No. 29.) This Court denied the parties' joint motion without prejudice and ordered the parties to file a revised joint motion with additional information. (ECF No. 30.) The Court instructed the parties to included additional information to evaluate whether the proposed Settlement Agreement is fair and reasonable, including what percentage of the calculated damages the proposed individual settlement payments reflect, an estimate of the unpaid overtime hours, and hourly rates. (*Id.* PageID 310–11, 314.) The parties subsequently filed a Revised Joint Motion, which included additional information, and asked the Court for the same relief as the Joint Motion. (Rev. Jt. Mot.)

## ANALYSIS

"As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court." *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) (Black, J.) (citation omitted). To determine whether a proposed FLSA settlement is fair and reasonable, the Court considers: "(1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of plaintiff's success on the merits; and (5) the public interest in settlement." *Clevenger v. JMC Mech., Inc.*, No. 2:15-CV-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (citations omitted). The Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6 (S.D.

Ohio Sep. 9, 2016) (Marbley, J.) (citations omitted).

**I.      Proposed Settlement is Fair and Reasonable**

The proposed settlement satisfies each of the *Clevenger* factors.

    **A.      No Indicia of Fraud or Collusion Exists**

There is no indicia of fraud or collusion. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *2 (S.D. Ohio Aug. 12, 2020) (citation omitted). The proposed Settlement Agreement was achieved only after more than a month of arm's-length and good-faith negotiations between the parties. (Rev. Jt. Mot. PageID 326; Dyer Decl., ECF No. 31-1 ¶ 34.) As such, there is no indicia of fraud or collusion, and this factor favors approval of the Settlement Agreement.

    **B.      Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval**

The policy favoring the settlement of collective actions and other complex cases applies here. "[W]age and hour class/collective actions . . . are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022). Without settlement, the parties would be made to engage in costly litigation, such as formal written discovery, depositions, dispositive motions, trial, and potential appeals. In contrast, this Settlement Agreement provides prompt and efficient relief to Plaintiffs. Therefore, this factor favors approval of the proposed Settlement Agreement.

    **C.      Investigation Allowed the Parties to Act Intelligently**

The parties engaged in sufficient investigation and analysis prior to negotiating the Settlement Agreement. Specifically, Defendant produced Plaintiffs' payroll records, timesheets, and client schedules. (Rev. Jt. Mot. PageID 327.) Both parties reviewed the discovery production

and worked together to calculate Plaintiffs' damages, allowing the parties to engage in good faith settlement discussions. (*Id.* PageID 327–28; Dyer Decl. ¶¶ 7–35.) The parties assert that they thoroughly researched and understood the legal and factual issues in the case. (Rev. Jt. Mot. PageID 327.) The Court finds that the parties engaged in sufficient investigation to act intelligently, and therefore, this factor supports the proposed Settlement Agreement.

### D. Likelihood of Plaintiffs' Success is Uncertain

Counsel for the parties believe in the merits of their clients' claims but "recognize that litigation entails uncertainty and risk in terms of costs, duration, and result." (Rev. Jt. Mot. PageID 328.) Plaintiffs allege that Defendant did not pay them for travel time and overtime under the FLSA and OMFWSA. (Compl. ¶¶ 29, 30, 43, 44.) Defendant "disputes liability, contend [sic] that Plaintiffs were properly paid, and deny [sic] any and all wrongdoing." (Rev. Jt. Mot. PageID 328.) Plaintiffs acknowledge the uncertainty of the outcome of their claims, including availability of liquidated damages, because the uncompensated drive time is difficult to prove and can only be estimated. (*Id.*) Because of the uncertainties surrounding this factor, it is neutral.

### E. Public Interest Favors Settlement

The "public interest is advanced by fair, reasonable, and adequate settlements." *Johnson v. Kestrel Eng'g, Inc.*, No. 2:15-CV-2575, 2016 WL 7655249, at *2 (S.D. Ohio Sept. 22, 2016). For the reasons above, the Court finds that this proposed Settlement Agreement is fair, reasonable, and adequate and therefore furthers the public interest.

## II. Distribution of Settlement Funds is Equitable

In making their reasonableness determination, courts consider the percentage of the calculated damages estimate that the proposed individual settlement payments reflect. *Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) ("The settlement allocation awards Plaintiffs direct cash payments of almost 81% of the alleged owed

overtime wages on the three-year period or 182% of the alleged overtime wages over the two-year period. . . . after fees and costs this represents approximately 115% of the alleged overtime wages over the two-year period.") (citations and quotations omitted); *Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (finding the recovery to be "not just fair and reasonable" but "exceptional" where the "Net Settlement Fund equals approximately 144% of calculated alleged unpaid overtime for a three-year period"). "Additionally, when a settlement agreement proposes an award of attorney's fees, such fees must be reasonable." *Clevenger*, 2015 WL 12681645, at *1; 29 U.S.C. § 216(b) (A court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action.").

A. **The Proposed Individual Settlement Payments**

The proposed gross settlement amount is $29,287.19. (Rev. Jt. Mot. PageID 323.) The Settlement Agreement provides individual settlement payments to Plaintiffs as follows: Mary Morrison, $3,858.11; Tammy Patterson, $709.85; Osnat Elbasel, $24.00; Marsha Pickelsimer, $4,007.75;[1] and Alisha Pickelsimer, $1,645.60. (*Id.* PageID 324.) Each Plaintiff will receive her settlement payment divided equally between two checks, "one as a payment for wages, less all applicable withholdings, for which an IRS Form W-2 will be issued, and the other payment for liquidated damages, which will have no withholdings and for which an IRS Form 1099 will be issued." (*Id.*)

---

[1] The Revised Joint Motion provides that Marsha Pickelsimer will receive only $2,003.87 but this appears to be a clerical error. (*See* Rev. Jt. Mot. PageID 324.) The Settlement Agreement lists the correct total gross sum of $4,007.75 owed to Marsha Pickelsimer. (ECF No. 31-2, PageID 351–52.) That total includes the damages for the overtime violations ($2,357.50) plus the liquidated damages ($1,650.25), divided into two separate payment amounts of $2,003.87 and $2,003.88. (*Id.*) The $4,007.75 value is the amount used to calculate the total gross settlement amount of $29,287.19. (ECF No. 31-2, PageID 350.)

5

The parties explain that the proposed individual settlement payments to Plaintiffs "represent damages comprised of the following: 1) unpaid overtime premiums for reported hours worked in excess of 40 per week; 2) unpaid and unreported drive time between clients' homes within a single shift; and 3) liquidated damages." (*Id.*) The parties also explain the process they used to compute the individual settlement payments, including how they determined each Plaintiff's regular and overtime rates and estimated uncompensated drive time.[2] (*Id.* PageID 319–23.) The parties reviewed each Plaintiff's timesheets and payroll records to determine whether he or she was not paid overtime rates for overtime hours ("straight time violations") and for drive time ("drive time violations"). (*Id.* PageID 319.) To address Plaintiffs' liquated damages claim, while accounting for Defendant's argument that Plaintiffs would not "automatically" be entitled to a liquidated damages award, the parties agreed to discount four out of the five Plaintiffs' total possible liquated damages award. (*Id.* PageID 322.)

Plaintiff Tammy Patterson incurred damages for straight time and drive time violations. Plaintiff Patterson's hourly rate was $11 per hour, and her overtime rate was $16.50 per hour. (*Id.*) She was not compensated for 2.83 hours of drive time. (*Id.*) This time was included in her overtime calculations. (*Id.* PageID 320.) Defendant agreed to pay Plaintiff Patterson $417.56 in overtime damages, which is 100% of her claim. (*Id.* PageID 320, 324.) Plaintiffs agreed to discount her potential liquated damages claim down to 70%, for a total of $292.29. (*Id.* PageID 322.) Under the proposed Settlement Agreement, Plaintiff Patterson would receive a total of $709.85. (*Id.* PageID 324.)

Plaintiffs Osnat Elbasel, Marsha Pickelsimer, and Alisha Pickelsimer only incurred damages for straight time violations. (*Id.* PageID 320.) Their overtime rates ranged from $16.50

---

[2] The parties did not however provide the number of uncompensated overtime hours for each Plaintiff.

to $18.00 per hour. (*Id.*) Defendant agreed to pay Plaintiff Elbasel $12.00 in overtime damages, which is 100% of her claim. (*Id.* PageID 320, 324.) Plaintiffs agreed to not discount her potential liquated damages claim, which equals $12.00. (*Id.* PageID 322.) Under the proposed Settlement Agreement, Plaintiff Elbasel would receive a total of $24.00. (*Id.* PageID 324.)

Defendant agreed to pay Plaintiff Marsha Pickelsimer $2,357.50 in overtime damages, which is 100% of her claim. (*Id.* PageID 320, 324.) Plaintiffs agreed to discount her potential liquated damages claim by 70%, for a total of $1,650.25. (*Id.* PageID 322.) Under the proposed Settlement Agreement, Plaintiff Marsha Pickelsimer would receive a total of $4,007.75.[3] (*Id.* PageID 324.)

Defendant agreed to pay Plaintiff Alisha Pickelsimer $968.00 in overtime damages, which is 100% of her claim. (*Id.* PageID 320, 324.) Plaintiffs agreed to discount her potential liquated damages claim by 70%, for a total of $677.60. (*Id.* PageID 322.) Under the proposed Settlement Agreement, Plaintiff Alisha Pickelsimer would receive a total of $1,645.60. (*Id.* PageID 324.)

Plaintiff Mary Morrison incurred damages for drive time violations. (*Id.* PageID 321.) Plaintiff Morrison's overtime rate was $21 per hour. The parties disagreed over how to calculate her uncompensated drive time. To resolve their dispute, the parties agreed on 108 hours of uncompensated drive time multiplied by Plaintiff Morrison's overtime rate, which equals $2,269.11. (*Id.* PageID 321, 324.) This was more than double Defendant's approximation of Plaintiff Morrison's uncompensated drive time. The parties agreed to discount her potential liquated damages claim by 70%, totaling $1,589.00. (*Id.* PageID 323.) Under the proposed

---

[3] As mentioned in a previous footnote, the Revised Joint Motion incorrectly lists Marsha Pickelsimer's total individual settlement amount as $2,003.87. (*See* Rev. Jt. Mot. PageID 324.) This value comes from one of the two payments Marsha Pickelsimer will receive under the Settlement Agreement. (ECF No. 31-2, PageID 351–52.) Her total settlement amount of $4,007.75 will be divided into two payments in the amount of $2,003.87 and $2,003.88. (*Id.*)

Settlement Agreement, Plaintiff Morrison would receive a total of $3,858.11. (*Id.* PageID 324.)

Under this proposed Settlement Agreement, each Plaintiff would receive at least 100% of "overtime wages owed to them over a three-year statute of limitations period based on the parties' overtime calculations" and at least 70% of the potential liquidated damages they could recover in the same period. (*Id.* PageID 324.) The Court finds that the individual settlement payments are fair and reasonable.

### B. The Proposed Attorneys' Fees and Expenses Award

Plaintiffs' counsel asks for an attorneys' fees award of $18,500, which constitutes 63% of the total settlement fund. (Rev. Jt. Mot. PageID 331.) They also request reimbursement of litigation expenses totaling $541.88, which together with the attorneys' fees award is 65% of the total settlement fund. (*Id.*) The Court previously rejected this request because it could not evaluate the reasonableness of the proposed attorney's fees without information as to what percentage of the total potential recovery the individual settlement payments would constitute. (ECF 30 PageID 313–14.)

While an award of attorneys' fees to a prevailing plaintiff is mandatory under § 216(b), "the amount of the award is within the discretion of the judge." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (citation omitted). A plaintiff "bears the burden of proving that the requested fees and expenses are reasonable." *Barnett v. E-Waste Sys., Inc.*, No. 1:14-CV-908, 2015 WL 1757302, at *7 (S.D. Ohio Apr. 17, 2015) (Black, J.) (quotations omitted). Even so, when examining the reasonableness of a fees award in an FLSA settlement, "the Court is cognizant that '[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Bailey*, 2020 WL 4673163, at *5 (quoting *Fegley*, 19 F.3d at 1134). "[A]n award of attorney fees encourages the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at

8

1134–35 (quotations omitted).

District courts have a choice to calculate attorneys' fees by either using the lodestar method or the percentage-of-the-fund method. *Smyers v. Ohio Mulch Supply Inc.*, No. 21-3008, 2021 WL 2774665, at *2 (6th Cir. July 1, 2021). Under the lodestar method, courts calculate counsel's reasonable hourly rate and the number of hours that counsel reasonably expended on the case. *Id.* Under the percentage-of-the-fund method, courts assign a proportion of the total settlement to counsel. *Id.* District courts must explain their "reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Id.* (internal quotations and citations omitted).

Plaintiffs' counsel ask the Court to engage in a lodestar analysis. (Rev. Jt. Mot. PageID 329–31; ECF Nos. 31-1, 31-3). Defendant does not contest Plaintiffs' request for a lodestar analysis. Thus, the Court will calculate the attorneys' fees with the lodestar analysis. "There is a strong presumption that a prevailing plaintiff's attorney is entitled to the lodestar fee." *Funk v. Airstream, Inc.*, No. 3:17-CV-260, 2019 WL 4599816, at *2 (S.D. Ohio Sept. 23, 2019) (Rice, J.) (quotation omitted). The amount can be adjusted up or down, "depending on the circumstances." *Id.*

Plaintiffs' counsel submitted their billing records with their declarations. (ECF Nos. 31-1, 31-3.) They focus the Court's attention on the fact that while they have "a total of $22,849.50 in fees under the lodestar approach, Plaintiffs' Counsel [has] agreed to accept the lesser amount of $18,500.00 to achieve a resolution of this action." (Rev. Jt. Mot. PageID 331.) Defendant does not contest Plaintiffs' proposed amount or hourly rates, nor does it insist on further reduction.

The Court approves the fee award of $18,500.00. Plaintiffs' counsel spent a fair number of hours at a reasonable rate on this matter. (*See* ECF Nos. 31-1, 31-3.) Although the proposed attorneys' fees constitute 63% of the total settlement fund, each Plaintiff will receive at least 100% of their overtime and drive time damages, as well as at least 70% of their potential liquidated

9

damages. (Rev. Jt. Mot. PageID 331); *Clark v. Miller Valentine Partners Ltd II*, No. 1:20-CV-295, 2023 WL 5087233, at *6–7 (S.D. Ohio Aug. 8, 2023) (Cole, J.) (approving award of attorneys' fees in excess of plaintiffs' recovery); *Funk*, 2019 WL 4599816, at *1, 8 (same). Only four plaintiffs opted in to this collective, which contributed to the larger-than-usual fee award percentage of the total settlement fund. Nor does Defendant oppose Plaintiffs' counsel's request. Thus, the Court awards Plaintiffs' counsel $18,500.00 in fees.

Finally, Plaintiffs' counsel seeks $541.88 in expenses, including filing fees and postage. (ECF No. 31-A.) The Court finds the request to be reasonable. Accordingly, the Court awards Plaintiffs' counsel $541.88 in expenses.

## CONCLUSION

The Court hereby (1) **GRANTS** the parties' Revised Joint Motion for Approval of FLSA Settlement Agreement (ECF No. 31); (2) **APPROVES** Plaintiffs' Counsels' request for fees and costs; (3) **APPROVES** the individual settlement payments to Plaintiffs; and (4) **DISMISSES** this case with prejudice. The Clerk is **DIRECTED** to **ENTER JUDGMENT** and close the case.

    IT IS SO ORDERED.

**10/8/2024**                         **s/Edmund A. Sargus, Jr.**
**DATE**                               **EDMUND A. SARGUS, JR.**
                                       **UNITED STATES DISTRICT JUDGE**